Terry Roy HOLMAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–818.

Court of Criminal Appeals of Oklahoma.

March 14, 1977.

Thomas W. Burns, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Douglas L. Combs, Asst. Atty. Gen., for appellee.

## OPINION

BLISS, Judge:

The Appellant, Terry Roy Holman, hereinafter referred to as defendant, was charged, tried before a jury in a two-stage proceeding and convicted in the District Court of Tulsa County, Case No. CRF–74–1210, of the crime of Uttering a Forged Instrument After Former Conviction of a Felony. Punishment was assessed at a term of twelve (12) years under the direction and control of the Department of Corrections of the State of Oklahoma. From a judgment and sentence in accordance with the verdict, the defendant has perfected his timely appeal.

Briefly stated, the evidence adduced at trial is as follows: Dennis Bloyed testified that in April of 1974, he was an assistant manager of a Safeway Store in Tulsa, Oklahoma. On Sunday, April 29, 1974, he cashed two checks from Jim Walters Homes, Inc., made payable to a Terry Roy Holman, one of said checks being in the amount of $273.21. He received both checks from the defendant and after determining that the defendant had on file a Safeway check cashing card he cashed the checks giving money to the defendant. Wayne Hornsby, the State's next witness, testified that he was regional manager for Jim Walters Homes, Inc., but in April, 1974, he was assistant regional supervisor in the Tulsa Office. On Monday, April 30, 1974, when he arrived at his office he observed that a front door had been jimmied and someone had entered the office. He further determined that approximately twenty-five checks, consecutively numbered 9360 thru 9385, were missing. The witness identified State's Exhibits No. 1 and No. 2 as checks from the Jim Walters subcontractor's account within the numbered sequence of the missing checks. Both checks had a payee by the name of Terry Roy Holman. He further testified that the particular type of checks involved were used only by Jim Walters to pay subcontractors and to the best of his knowledge the defendant had never been a subcontractor for Jim Walters or worked in any capacity for the company.

He further testified that both checks were signed by a "Jerry Summers", that in April of 1974, the individuals authorized to sign checks on the subcontractor's account in Tulsa did not include anyone by that name and that to the best of his knowledge no one by the name of Jerry Summers had ever been employed by the company. Both the State and the defendant then rested and the jury returned a verdict of guilty. The State and the defendant then stipulated as to the defendant's prior convictions and the jury assessed punishment at a term of twelve (12) years.

■ The defendant's first assignment of error urges that the trial court erred in allowing Wayne Hornsby to testify concerning the break in and the disappearance of the checks from his office since the evidence was not necessary to the State's case, was evidence of a separate offense and was extremely prejudicial to the defendant.

In *Smith v. State*, Okl.Cr., 291 P.2d 378, this Court in considering a similar fact situation held as follows:

"The defendant further contends that the court erred in admitting in evidence the theft of blank checks and the check-writing machine stolen from the office of Mr. Poston. This evidence was clearly admissible, since it established the loss of the check-writing machine, and the check book, as corroboration of Mr. Poston's testimony to the effect that the check uttered by the defendant herein was forged. In 22 C.J.S. Criminal Law § 691, p. 1138 (N.61), the rule with reference to the admissibility of such evidence is stated as follows:

'Transactions which are so related to, and connected with, the forgery charged as to be otherwise admissible are not inadmissible because they tend to prove a wholly dissimilar crime, particularly where they constitute part of a connected or continuous transaction on the part of accused.'

It is true the testimony to which objection is made may have had a tendency to indirectly connect appellant with another crime, yet that fact alone would not de-

prive the State of the right to show how the appellant might have become possessed with the check. *State v. Mc-Donald*, 116 Wash. 668, 200 P. 326. See also *People v. Klopfer*, 61 Cal.App. 291, 214 P. 878, wherein the government was permitted to offer evidence that the place of business of the witness had been burglarized and blank checks had been stolen, and the defendant had uttered some of the checks which had been forged, and had one on his person."

See, also, *Griffin v. State*, Okl.Cr., 490 P.2d 1387, wherein we held that if evidence is logically pertinent in that it reasonably tends to prove a material fact in issue it is not to be rejected merely because it incidentally tends to prove the defendant guilty of another crime. The defendant's first assignment is without merit.

■ The defendant's final assignment of error contends that the trial court erred in not sustaining the defendant's demurrer to the evidence. In support of said contention the defendant argues that the State wholly failed to prove intent to defraud and knowledge that the instruments were forged. Again we must disagree.

The defendant was charged under the provisions of 21 O.S.1971, § 1592 which reads as follows:

"Every person who, with intent to defraud, utters or publishes as true and forged, altered or counterfeited instrument or any counterfeit gold or silver coin, the forging, altering or counterfeiting of which is hereinbefore declared to be punishable, knowing such instrument or coin to be forged, altered or counterfeited is guilty of forgery in the second degree."

In *Smith v. State*, supra, where a similar argument was advanced this Court held that the question of intent to defraud and guilty knowledge are both questions for the jury to decide under the circumstances and that those elements may be established by circumstantial evidence as well as direct testimony. In the instant case there was competent evidence presented which reasonably tended to sustain the allegations of

intent to defraud and guilty knowledge. The State's evidence showed that the defendant had never been a subcontractor for Jim Walters or employed by said company in any capacity and was therefore not entitled to compensation by the company. No one by the name of "Jerry Summers" was authorized to draw checks on the subcontractor's account and the checks were stolen from the company office sometime during the weekend in question. Considering these circumstances there is competent circumstantial evidence reasonably tending to sustain the allegations of the charge. The trial court did not err in failing to sustain the demurrer to the evidence. *Lauhoff v. State*, Okl.Cr., 508 P.2d 285.

From an examination of the record as a whole it is our opinion that the defendant received a fair and impartial trial before a jury, that no substantial right of the defendant was prejudiced and that the judgment and sentence appealed from should be, and the same is hereby *AFFIRMED*.

BUSSEY, P. J., and BRETT, J., concur.